T. O. PANGLE, ADMINISTRATOR, v. APPALACHIAN HALL.

(Filed 23 December, 1925.)

**1. Insane Persons—Hospitals—Negligence—Suicide—Damages.**

Where a privately owned hospital for the treatment of mental diseases for gain, receives a patient afflicted with melancholia, and inclined to self destruction, it is liable for the negligence of those in charge of the patient resulting in his suicide.

**2. Same—Evidence—Declarations—Principal and Agent—Res Gestae.**

A letter written by a physician formerly in charge of a patient at a private hospital for the insane to the plaintiff, as to the manner of the suicide of the patient, after the patient's suicide, that would be evidence of the negligence of the hospital, in respect thereto, is not a part of the *res gestæ*, and is properly excluded upon the trial.

**3. Evidence—Conjecture—Pleadings.**

In order to recover damages for negligently resulting in the death of another, it is required not only that the complaint sufficiently alleges the negligence complained of, but that the evidence thereof on the trial raises more than a mere conjecture or possibility of the existence of the necessary fact in issue.

**4. Insane Persons—Private Hospitals—Treatment—Care Required—Negligence.**

Where a privately owned hospital for the treatment of insane persons receives a patient afflicted with melancholia, and having a tendency to self-destruction, its management implies: 1, that its physicians, nurses and attendants possess the requisite degree of learning, skill and ability necessary to the practice of their professions, and which others similarly situated ordinarily possess; 2, that they will exercise ordinary and reasonable care and diligence in the use of their skill and the application of their knowledge to the patient's case: 3, and that in the care thereof they will exercise their best judgment and ability.

APPEAL by plaintiff from *Webb, J.,* at April Term, 1925, of BUNCOMBE.

Civil action for damages, tried upon allegations and denials that plaintiff's intestate came to his death by reason of the defendant's negligence in failing properly to care for said intestate while a patient at defendant's hospital and which resulted in his self-destruction, or suicide.

At the close of plaintiff's evidence and on motion of defendant, the court entered judgment as of nonsuit, from which the plaintiff appeals.

*George M. Pritchard and McKinley Pritchard for plaintiff.*
*J. G. Merrimon for defendant.*

STACY, C. J. About the middle of November, 1922, plaintiff's intestate, J. Suber, a farmer living near Newberry, S. C., was brought to

53—190

defendant's hospital in Asheville, N. C., by his physician, Dr. W. H. Moore, who testified that Mr. Suber was then in a depressed mental condition, bordering on melancholia; that he informed Dr. M. A. Griffin, one of the managers of the hospital, of the patient's condition, as he had observed it, and told him how Mr. Suber had recently spent a day in the graveyard, near his home, with a shotgun in his hands, under conditions which indicated suicidal tendencies. While thus in the defendant's hospital, where patients are treated for mental and nervous diseases, for private gain, plaintiff's intestate committed suicide on 23 December, 1922, by hanging himself with a rope.

The only evidence as to how the suicide occurred was contained in a letter written by Dr. Griffin to Dr. Moore sometime after Christmas, following the death of plaintiff's intestate. A portion of this letter, in which the writer stated that Mr. Suber had tried to jump in front of a truck about two weeks prior to his death, and which was offered to fix the defendant with further notice of the patient's suicidal mania, was excluded on objection by the defendant, and this forms the basis of one of plaintiff's exceptions. The evidence was clearly incompetent and his Honor committed no error in withholding it from the jury. *Berry v. Cedar Works,* 184 N. C., 187; *R. R. v. Smitherman,* 178 N. C., 595.

The authorities in this State are all to the effect that what an agent says, relative to an act then being done by him within the scope of his agency, is admissible as a part of the *res gestæ,* and may be offered in evidence, either for or against the principal; but what the agent says afterwards, and merely narrative of a past occurrence, though his agency may continue as to other matters, or generally, is only hearsay and not competent as against the principal. *Johnson v. Ins. Co.,* 172 N. C., 142; *Southerland v. R. R.,* 106 N. C., 100.

With this letter excluded, we think the court properly held that the plaintiff had failed to make out a case sufficient to go to the jury on his allegations of negligence.

In *Byrd v. Express Co.,* 139 N. C., 273, after reviewing the authorities, touching the sufficiency of the evidence to support a verdict in favor of the plaintiff, *Walker, J.,* said: "It all comes to this that there must be legal evidence of the fact in issue and not merely such as raises a suspicion or conjecture in regard to it. The plaintiff must do more than show the possible liability of the defendant for the injury. He must go further and offer at least some evidence which reasonably tends to prove every fact essential to his success." To like effect are the decisions in *Crenshaw v. Street R. R.,* 144 N. C., 314, *Fox v. Texas Co.,* 180 N. C., 543, and many other cases too numerous to be cited.

There can be no question about the liability of a privately owned or corporate hospital, conducted for individual gain, and not for charitable

purposes, for damages to its patients resulting from negligence attributable to the agents of such hospital. *Young v. Gruner,* 173 N. C., 622; *Green v. Biggs,* 167 N. C., 417; *Hogan v. Hospital Co.,* 59 S. E. (W. Va.), 943; *Harris v. Woman's Hospital,* 14 N. Y. Sup., 881; *Breeze v. Ry. Co.,* 174 S. W. (Mo.), 409.

Ordinarily, when a hospital, like the present one, undertakes to treat a patient, without any special arrangement or agreement, its engagement implies three things: (1) that its physicians, nurses and attendants possess the requisite degree of learning, skill and ability necessary to the practice of their profession, and which others similarly situated ordinarily possess; (2) that its physicians, nurses and attendants will exercise reasonable and ordinary care and diligence in the use of their skill and in the application of their knowledge to the patient's case; and (3) that its physicians, nurses and attendants will exert their best judgment in the treatment and care of the case. *Mullinax v. Hord,* 174 N. C., 607; *Nash v. Royster,* 189 N. C., 408, and cases there cited. And in the application of this general principle, such hospitals have been held liable for the negligent failure of their officers or employees to guard and restrain insane or delirious patients and prevent them from doing injury to themselves. *Richardson v. Dumas,* 64 So. (Miss.), 459; *Wetzel v. Omaha Maternity, etc., Asso.,* 96 Neb., 636, 148 N. W., 582, 36 Ann. Cas., 1224, and note; 13 R. C. L., 949.

But we need not enter upon a discussion of general principles, which are well established, because in the instant case the plaintiff has offered no sufficient evidence of the defendant's negligence. Allegation alone will not do; he must have some evidence also in order to support a recovery.

On the record, the judgment of nonsuit was properly entered.

Affirmed.